## Succession of MATHEWS.*
### No. 15057.

Court of Appeal of Louisiana. Orleans.
Jan. 7, 1935.

Milling, Godchaux, Saal & Milling and Hunter C. Leake, 2d, all of New Orleans, for appellant.

Louis R. Hoover, of New Orleans, for appellees.

LECHE, Judge.

On December 2, 1933, the executor filed his provisional account in this succession and listed thereon a bequest of $200 to Natalie Walsh Miller, wife of Dr. W. M. Miller, followed by this notation:

"(The legacy to Mrs. Miller of $200.00 is offset by a note owed by Mrs. Miller and her husband, Dr. W. M. Miller, of $340.00. After deducting the legacy of $200.00, $140.00 will be due by them)."

Dr. Miller and his wife filed oppositions to the provisional account, alleging that the legacy of $200 to Mrs. Miller constituted her separate property and is not liable for the debts of the community, if any, and that the debt represented by the note of $340 had been "forgiven" by a proper inscription on said note in decedent's own handwriting and that Mrs. Miller was entitled to the bequest of $200 without any deduction or set-off. The oppositions were maintained and the executor ordered to pay opponent the full amount of the bequest of $200 without any deduction. From this judgment the executor has appealed.

It appears that for a period of about eighteen years decedent had made her home with Dr. and Mrs. Miller. She paid the Millers $40 a month for board and lodging. On January 19, 1933, decedent advanced the sum of $340 and received a note for this amount bearing 8 per cent. per annum interest from date and to be paid "by the makers furnishing board and lodging to holder at rate of $40.00 per month commencing with the Month of January, 1933, and credit entered as board is furnished." On the reverse side of the note appears this provision:

"In the event of death, note difference is to be paid in money with legal interest at the expiration of this note."

This note was fully discharged and is not in controversy, but was introduced and filed in evidence presumably to establish the custom or practice as between decedent and the Millers.

On October 10, 1933, decedent gave Mrs. Miller two checks, one for $240 and one for $100. Dr. and Mrs. Miller signed a note dated November 1, 1933, in the sum of $340,

bearing interest at 8 per cent. per annum from date until paid and payable "by the makers furnishing board and lodging to the holder at the rate of $40.00 per month, commencing with the first day of November, 1933, and credit entered as board is furnished."

On the reverse side is written this provision:

"In the event of death of Miss Mary McClellan, difference is to be paid in money with interest at the expiration of this note, June 30, 1934."

Then follows a notation in the handwriting of and signed by decedent, reading:

"In the event of my death debt will be forgiven."

Although this note is postdated November 1, 1933, some time after decedent's death, there is nothing in the record to show when it was made or delivered by the makers. Mrs. Miller, referring to decedent, testified:

"On the morning that she left for the hospital she handed me the note and told me to keep it and in the event of her death she did not want Dr. Miller or myself to have to meet the obligation."

There is no evidence as to when decedent made the notation forgiving the debt. However, the preceding language indicates that it was made some time after the note was made. Decedent went to the hospital on the morning of October 10, 1933, and died on October 14, 1933.

With reference to the first ground of opposition, namely, whether or not the wife, as comaker of a note with her husband, is personally liable for debts of the community, that question has been affirmatively settled in the case of Howard v. Cardella, 171 La. 921, 132 So. 501.

With reference to the second ground of opposition, namely, that the debt has been forgiven, we approach the question bearing in mind that the intention of the decedent was perfectly plain, that she clearly did not want opponents to have to pay the debt in the event of her death, and that, if legally possible, her wishes should be carried out.

The note was not delivered to opponents in the sense that delivery connotes the remission of the debt. The note was given in safekeeping to Mrs. Miller, and had decedent survived she had a perfect right to demand the return of the note. She plainly intended the debt to be forgiven only in the event of her death, and this is shown, not only by her language on the morning she left for the hospital, as testified to by Mrs. Miller, but also by her own handwriting on the reverse side of the note.

The legal effect of the words "in the event of my death debt will be forgiven," written and signed by decedent on the reverse side of the note, presents an interesting question. Had this writing been dated by decedent, it would have been a perfect olographic will under article 1588 of the Civil Code. Lack of a date, however, is fatal to this form of will. It does not approach any of the forms prescribed by the Civil Code for any of the other kinds of testaments and, consequently, falls without the category of a donation mortis causa because Civil Code, article 1570, provides that: "No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated." Likewise, the suspensive condition "in the event of my death" removes it from the class of donations inter vivos which, under Civil Code article 1468, are acts by which "the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it," and under article 1467 no one can acquire or dispose of property gratuitously, unless by donations inter vivos or mortis causa, and in the forms prescribed therefor.

We now turn to the question of remission. Article 2199 of the Civil Code reads:

"The remission of the debt is either conventional, when it is expressly granted to the debtor by a creditor either having a capacity to alienate;

"Or tacit, when the creditor voluntarily surrenders to his debtor the original title under private signature which establishes the obligation."

No cases have been called to our attention where there has been a conditional remission of a debt, but we see no sound reason why a remission could not be conditional. While it is true that no particular form is prescribed for the remission of a debt, yet if the remission falls within the category of a donation mortis causa, it must fulfill all of the requirements prescribed for same. A remission, such as in this case, conditioned upon the death of the creditor, certainly falls in the class of donations mortis causa, and, this being the case, if any of the requirements as to form are lacking, the purported remission is null and void.

In the case of Blake v. Kearney, Man. Unrep. Cas. 320, Mrs. Fenn held the note of her son-in-law in the sum of $893.83, and volun-

tarily destroyed it in his presence, telling him that she did not wish it paid. The court said:

"It is evident that the intention of Mrs. Fenn was to remit the debt of which the note destroyed was the evidence. This intention was not postponed to take effect after the death of Mrs. Fenn, or at any future day. It was carried into effect and executed at once, and in the most unequivocal and certain manner. Mrs. Fenn told Kearney she did not wish the note to be paid, and when she destroyed the note, in order to manifest and make effectual that right and intention, she expressly granted to him the remission of the debt."

In this case, had the decedent written the words, "the debt is hereby remitted," there is no question but that the remission would have been valid; or had she unequivocally delivered the note to Mrs. Miller or destroyed it, the effect would have been the same. She did none of these things, however, and it is our opinion that the writing in this case is an attempted disposition mortis causa and, for the reasons above set forth, is without legal effect.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that the oppositions of Natalie Walsh Miller and Dr. W. M. Miller to the provisional account of the executor of this succession, R. E. Milling, be and the same are dismissed at their cost.

Reversed.